**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

|  |  |
|---|---|
| MONDIS TECHNOLOGY LTD.,<br><br>              Plaintiff,<br><br>v.<br><br>LG ELECTRONICS, INC. and<br>LG ELECTRONICS U.S.A., INC.,<br><br>              Defendants. | Civil Case No.: _____<br><br>**JURY** |

## COMPLAINT

Plaintiff Mondis Technology Ltd. ("Mondis" or "Plaintiff"), for its Complaint against Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc. (collectively, "LG" or "Defendants") hereby alleges as follows:

## NATURE OF ACTION

1.      This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*

## THE PARTIES

2.      Plaintiff Mondis is a corporation organized under the laws of England, with its principal place of business at Suite 3C, Lyttelton House, 2 Lyttelton Road, London N2 0EF, England.

3.      Defendant LG Electronics, Inc. ("LG Korea") is a corporation organized under the laws of Korea with its principal place of business at LG Twin Tower 128, Yeoui-daero, Yeongdeungpo-gu, Seoul, Korea.  LG Korea is in the business of developing, manufacturing,

and selling consumer electronics for importation into the United States.  Such devices include, but are not limited to, televisions.

4.      Defendant LG Electronics U.S.A., Inc. ("LG USA") is a company organized under the laws of the state of Delaware with its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey.  LG USA has a registered agent, United States Corporation Company, located at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218 USA. LG USA is in the business of developing, manufacturing, importing, and selling electronic devices.  Such devices include, but are not limited to, televisions.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over the subject matter of this Complaint under 28 U.S.C. § 1338(a) because this action arises under the patent laws of the United States, including 35 U.S.C. § 271, *et seq.*

6.      This Court has personal jurisdiction over LG in this action.  LG knowingly and purposefully availed itself of the protections and benefits of the laws of the United States, the State of Texas, and this District. For example, LG availed itself of this District when it filed counterclaims against Plaintiff in *Mondis Tech. Ltd. v. LG Elecs., Inc.*, 2:07-cv-565, asserting actions for declaratory judgment of non-infringement, invalidity, and unenforceability of certain of Plaintiff's patents, including the Patents-in-Suit in this action.

7.      This Court also has personal jurisdiction over LG in this action because LG knowingly and purposefully ships, distributes, offers for sale, and/or sells its products in the United States and this District through an established distribution network, either directly or through intermediaries (including distributors, retailers, and others), subsidiaries, and/or agents. LG has knowingly placed the accused television into the stream of commerce, with the intent and

result that they have been distributed and sold in the state of Texas and this District.  For
example, accused LG televisions have been sold to and by Walmart and Best Buy stores located
within this District.

8.      This Court also has personal jurisdiction over LG in this action because LG has
purposefully and voluntarily operated and currently operates an interactive website that is
available to persons in this District which advertises and markets infringing televisions and
provides information as to stores located in this District which advertise and offer for sale the
accused televisions.  These accused LG televisions have been purchased by consumers in this
District.  Upon information and belief, LG has committed the tort of patent infringement in this
District and/or has induced others to commit patent infringement in this District.

9.      Venue is proper in this Court under 28 U.S.C. §§ 1391(b), (c), and (d), as well as
28 U.S.C. § 1400(b), in that LG is subject to personal jurisdiction in this District, and therefore is
deemed to reside in this District for purposes of venue, and LG has committed acts within this
judicial District giving rise to this action and does business in this District, including but not
limited to filing judicial actions in this District, distributing and/or offering for sale and/or selling
infringing televisions in this District, providing service and support to their respective customers
in this District, and/or operating an interactive website that is available to persons in this District
which advertises and markets infringing televisions and provides information as to stores located
in this District which advertise and offer for sale infringing televisions.

## THE PATENTS-IN-SUIT

10.     On January 28, 2003, United States Patent Number 6,513,088 ("the '088 Patent"),
entitled DISPLAY UNIT AND METHOD ENABLING BIDIRECTIONAL
COMMUNICATION WITH VIDEO SOURCE with named inventors Ikuya Arai and Kouji
Kitou, was duly and legally issued by the United States Patent and Trademark Office from

United States Application Number 09/732,292, claiming priority from a foreign application filed on February 10, 1993.  A true and correct copy of the '088 Patent is attached as Exhibit A to this Complaint.  Mondis is the assignee and owner of the right, title, and interest in and to the '088 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it, including past damages.

11.     On April 15, 2003, United States Patent Number 6,549,970 ("the '970 Patent"), entitled DISPLAY UNIT WITH CONTROLLER ENABLING BI-DIRECTIONAL COMMUNICATION WITH COMPUTER with named inventors Ikuya Arai and Kouji Kitou, was duly and legally issued by the United States Patent and Trademark Office from United States Application Number 09/732,291, claiming priority from a foreign application filed on February 10, 1993.  A true and correct copy of the '970 Patent is attached as Exhibit B to this Complaint.  Mondis is the assignee and owner of the right, title, and interest in and to the '970 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it, including past damages.

12.     On August 8, 2006, United States Patent Number 7,089,342 ("the '342 Patent"), entitled METHOD ENABLING DISPLAY UNIT TO BIDIRECTIONALLY COMMUNICATE WITH VIDEO SOURCE with named inventors Ikuya Arai and Kouji Kitou, was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application Number 10/772,236, claiming priority from a foreign application filed on February 10, 1993.  A true and correct copy of the '342 Patent is attached as Exhibit C to this Complaint.  Mondis is the assignee and owner of the right, title, and interest in and to the '342 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it, including past damages.

13.     On January 6, 2009, United States Patent Number 7,475,180 ("the '180 Patent"), entitled DISPLAY UNIT WITH COMMUNICATION CONTROLLER AND MEMORY FOR STORING IDENTIFICATION NUMBER FOR IDENTIFYING DISPLAY UNIT with named inventors Ikuya Arai and Kouji Kitou, was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application Number 10/160,022, claiming priority from a foreign application filed on February 10, 1993.  A true and correct copy of the '180 Patent is attached as Exhibit D to this Complaint.  Mondis is the assignee and owner of the right, title, and interest in and to the '180 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it, including past damages.

14.     On October 28, 2003, United States Patent Number 6,639,588 ("the '588 Patent"), entitled IMAGE DISPLAY APPARATUS, with named inventors Ikuya Arai, Kouji Kitou, and Yuji Sano, was duly and legally issued by the United States Patent and Trademark Office from United States Patent Application 10/166,691, claiming priority from a foreign application filed on February 20, 1992.  A true and correct copy of the '588 Patent is attached as Exhibit E to this Complaint.  Mondis is the assignee and owner of the right, title, and interest in and to the '588 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it, including past damages.

## FACTUAL BACKGROUND

### Prior Litigation

15.     On December 31, 2007, Mondis filed a Complaint in this district against LG *et. al.*, (Case No. 2:07-CV-565) alleging that certain LG computer monitors infringed, *inter alia*, the '088, '970, and '588 patents.

16.     On May 14, 2008, Mondis filed a First Amended Complaint in Case No. 2:07-CV-565, alleging that certain LG computer monitors also infringed the '342 patent.

17.     On March 9, 2009, Mondis filed a Second Amended Complaint in Case No. 2:07-CV-565, alleging that certain LG computer monitors also infringed the '180 patent.

18.     Mondis and LG subsequently reached a settlement with respect to Mondis's claims against LG's computer monitors, and the district court entered an Order of Dismissal on September 17, 2009.  The Order of Dismissal states that: "[a]ll claims and counterclaims in the above-captioned action between the parties are hereby dismissed: (a) with prejudice in relation to all products other than 'Unreleased Products' noted in the parties' Settlement Agreement, and (b) without prejudice in relation to those 'Unreleased Products.'"

19.     To the extent that any of Mondis' claims in Case No. 2:07-CV-565 pertained to infringement of the patents-in-suit by LG televisions, those claims were dismissed without prejudice.

20.     Following the settlement in Case No. 2:07-CV-565, Mondis and LG exchanged periodic communications and engaged in repeated negotiations regarding LG's need to obtain a license from Mondis for its television products.  At no time has Mondis or any other entity granted LG a license to practice any of the patents-in-suit with respect to televisions.

21.     After LG was dismissed from Case No. 2:09-CV-565, the case proceeded against named co-defendants Innolux and Hon Hai. At the conclusion of a jury trial, the jury returned a verdict finding that televisions manufactured, sold, and/or imported by Innolux and Hon Hai infringed at least claim 15 of the '342 patent and claim 14 of the '180 patent.  The jury also found these claims to be valid over numerous prior art references and extensive fact and expert

testimony introduced by the defendants.  The jury also determined that a reasonable royalty rate for televisions was 0.75%.

### Plug-and-Play ("PnP") Functionality

22.     The Video Electronics Standards Association ("VESA") is an industry standards setting organization for monitors and displays that was formed in the late 1980's.  VESA has promulgated several standards that relate to LG televisions

23.     More particularly, on June 7, 2004, VESA promulgated a standard for "Plug & Play."  The purpose of this standard was to enable a display and an attached video source to readily communicate with one another, wherein the display is able to transmit stored display unit information to the video source.  The video source is then able to use this display unit information to generate and send a compatible video signal to the display.  This process can take place automatically so that user intervention is not required.  The user may simply connect his computer or other video source to the display, and a viewable picture will be displayed without the user having to make numerous manual adjustments.  Indeed, this process is normally performed, for example, when a computer running Microsoft Windows or the Apple operating system is started and is connected to a display supporting the Plug-and-Play feature.

24.     To facilitate the foregoing Plug-and-Play functionality, displays supporting this technology include a memory that stores information relating to the display unit.  The specific types and formats of this display unit information are set forth in a VESA standard entitled Enhanced Extended Display Identification Data Standard ("E-EDID"). The EDID information may include data such as a product identification number, product name, a serial number, display type information, information relating to potentially supported functions (*e.g.*, power

management or operating modes), as well as characteristic information relating to the video resolutions and signal timings supported by the display unit.

25.     To further facilitate Plug-and-Play functionality, the display unit includes a bi-directional communications channel that enables the video source to request and receive the EDID display unit information from the memory.  This communications channel is described in the VESA Enhanced Display Data Channel Standard ("E-DDC").  The bi-directional communications channel described in the E-DDC standard employs a Philips I2C bus and protocols to enable the video source to read the EDID display unit information from the memory in the display unit.  The display unit further includes an I2C communications controller that manages these bi-directional communications.  The I2C protocol includes the sending of an acknowledgement signal back to the transmitter upon receipt of a message.

26.     Displays, including the accused LG televisions, include an interface for communicating video signals, display unit information, and control signals between the display and a video source.  Such interfaces include, but are not limited to, a VGA (*i.e.*, "RGB," "PC" or "D-SUB") interface.  In the case of a VGA interface, the accused televisions include a memory associated with the VGA interface that stores the EDID data.  Pins 12 and 15 of the VGA interface are used to implement the bi-directional I2C communications channel between the television and the video source that enables the video source to read the EDID data out of the television's memory.

27.     The accused LG televisions further include a video circuit for receiving, processing, displaying, and outputting video signals received over the video interfaces, including the VGA interface.  More particularly, the accused LG televisions include a system-on-a-chip ("SOC") that includes video input circuitry, analog and digital video decoders, scaling circuitry,

and output circuitry.  Non-limiting examples of such SOC's include the LG XD Engine

LGE2112, LG XD Engine LGE2111, and LG L9.

28.     LG manufactures and then imports, sells, or offers to sell in the United States

numerous models of televisions that support the VESA Plug-and-Play functionality and

implement the VESA E-EDID, VESA E-DDC, and Philips I2C standards.  LG TV's that provide

Plug-and-Play or EDID functionality comprise accused televisions. Non-limiting examples of

such accused televisions include: 26LG30, 22LF10, 32LH20, 37LH20, 50PJ350, and

47LM6200.

### Smart TV Functionality

29.     On or about June 2009, LG began importing and selling "smart" televisions in the

United States.  These "smart" televisions are capable of receiving and displaying streaming video

signals provided via an internet connection.  LG has marketed this functionality under various

trade names including, but not limited to, "NetCast" and "Smart TV."  LG's Smart TV's support

several on-line video streaming services, including: Netflix, CinemaNow, HuluPlus, Amazon,

YouTube, and Vudu, among others.

30.     To support these on-line video streaming services, LG Smart TV's include a

network interface such as an Ethernet interface, which uses an RJ45 connector.  The television

also includes a memory storing an Ethernet Hardware Address (EHA), also known as a Media

Access Control (MAC) address that is capable of identifying the television.  The circuitry in the

television associated with the Ethernet interface includes a communications controller for bi-

directionally communicating IP data packets that include display unit information, control

information and/or video signals between the Smart TV and the on-line video service.

31.     To support the on-line video streaming services, LG Smart TV's must be assigned an IP address that identifies the television when it is connected to a network.  The Smart TV obtains this IP address via a Dynamic Host Configuration Protocol (DHCP) process or the user manually assigns it.  After the IP address is received via the DHCP process or manually assigned, it is stored in a memory of the television and included in data packets sent from the television to the on-line video provider.

32.     To support the on-line video streaming services, LG Smart TV's further include an electronic serial number (ESN) that is stored in a memory of the television.  The ESN is capable of uniquely identifying the television.

33.     The on-line video services receive the IP address  and ESN from the Smart TV and generate packetized video signals based upon one or more of these two identification numbers of the television.

34.     By way of non-limiting example, Netflix provides its service to customers in the United States.  Netflix does not permit viewing of videos from most locations outside the United States.  When processing a request for a video that it wishes to provide only to United States customers, Netflix checks to determine whether the device that is requesting a video is in the United States.  In particular, Netflix examines the IP address from which the request came, and if Netflix determines that that IP address is not located in the United States, Netflix will not provide the requested video program and will instead send a video signal informing the customer that Netflix service is not supported at the customer's location.

35.     LG manufactures and then imports, sells, or offers to sell in the United States various models of televisions that support the foregoing Smart TV functionality.  These LG

Smart TV's comprise accused televisions.  Non-limiting examples of such accused televisions include: 47LH50, 50PS80, 47LM6200 and 55LM6200.

## COUNT I

### (LG's Infringement of the '088 Patent)

36.     Paragraphs 1 through 35 are incorporated by reference as if fully restated herein.

37.     LG has had knowledge of the '088 patent since no later than December 31, 2007. Pursuant to 35 U.S.C. § 287(a), LG received actual notice of infringement no later than this date.

38.     LG has directly infringed, either literally or under the doctrine of equivalents, one or more claims of the '088 patent under 35 U.S.C. § 271(a) by importing, selling, and/or offering to sell televisions that support Plug-and-Play and/or Smart TV functionality in the United States. LG has also directly infringed by using, testing, operating and/or demonstrating televisions possessing Plug-and-Play and/or Smart TV functionality at tradeshows or during the execution of test and repair procedures at service facilities in the United States.

39.     LG has indirectly infringed, either literally or under the doctrine of equivalents, one or more claims of the '088 patent under 35 U.S.C. § 271(b) by inducing users and customers of LG televisions to use the Plug-and-Play and/or Smart TV functionality in an infringing manner.  For example, LG advertises and identifies to users the Plug-and-Play functionality and provides instructions on how to connect video sources to the television's VGA port, wherein the TV will then use the claimed technology.  By way of further example, LG provides instructional and tutorial materials for its Smart TV functionality instructing users on how to configure and connect the televisions to the internet and to on-line video providers in a manner that results in the use of the claimed inventions.  These materials include instructional videos posted on LG's web site.  In view of the foregoing, LG has possessed specific intent to encourage others, and has

in fact encouraged others, to infringe one or more claims of the '088 patent.  The customers and end users have used and practiced the claimed inventions.

40.     On information and belief, LG has also indirectly infringed, either literally or under the doctrine of equivalents, one or more claims of the '088 patent under 35 U.S.C. § 271(b) by inducing third-parties to import, sell, or offer to sell LG televisions that possess Plug-and-Play and/or Smart TV functionality in the United States.  More particularly, LG has manufactured accused TV's overseas with full knowledge and intent that such TV's will be imported, sold, or offered for sale in the United States.  This intent is demonstrated at least by LG designing and manufacturing the TV's to be compliant with Federal Communication Commission (FCC) requirements, obtaining Underwriters Laboratories (UL) certification for the TV's, making the TV's compatible with ATSC broadcast standards used in the United States, providing written instructions and on-screen displays in English, maintaining a U.S. web site for marketing of the TV's, and by making the TV's compatible with U.S. power requirements.  LG encourages third-parties to import and/or sell the accused TV's in the United States by entering into contractual relationships with them and assisting them with the movement of LG's TV's through distribution channels into and within the United States. Third-parties have, in fact, imported, sold, and/or offered to sell the accused LG TV's in the United States.  Such third parties include, by way of example, Walmart and Best Buy.

41.     LG has also indirectly infringed, either literally or under the doctrine of equivalents, one or more claims of the '088 patent under 35 U.S.C. § 271(c) by importing, selling, and/or offering to sell in the United States televisions that possess Plug-and-Play and/or Smart TV functionality wherein there is no substantial non-infringing use for televisions with these features.  Further, televisions that include the foregoing functionalities are not staple items

of commerce.  In addition, LG knew that the TV's with the foregoing functionalities were especially made and adapted to use the claimed inventions of the '088 patent. Customers and end users of the accused LG televisions have used and practiced the claimed inventions.

42.     LG's infringement has been willful.  LG has been aware of the '088 patent since no later than December 31, 2007, and LG has engaged in prior litigation with Mondis over this patent.  Furthermore, LG has previously taken a license to the '088 patent for computer monitors, wherein computer monitors employ substantially similar Plug-and-Play functionality.  Thus, LG's conduct has been objectively reckless, and LG has possessed subjective specific intent to infringe the patent.

43.     Mondis has been harmed by LG's infringement and is entitled to recover damages to compensate for the infringement.  Further, any damages award should be trebled in view of LG's willful infringement.

## COUNT II

### (LG's Infringement of the '970 Patent)

44.     Paragraphs 1 through 35 are incorporated by reference as if fully restated herein.

45.     LG has had knowledge of the '970 patent since no later than December 31, 2007. Pursuant to 35 U.S.C. § 287(a), LG received actual notice of infringement no later than this date.

46.     LG has directly infringed, either literally or under the doctrine of equivalents, one or more claims of the '970 patent under 35 U.S.C. § 271(a) by importing, selling, and/or offering to sell televisions that support Plug-and-Play and/or Smart TV functionality in the United States. LG has also directly infringed by using, testing, operating and/or demonstrating televisions possessing Plug-and-Play and/or Smart TV functionality at tradeshows or during the execution of test and repair procedures at service facilities in the United States.

47.     LG has indirectly infringed, either literally or under the doctrine of equivalents, one or more claims of the '970 patent under 35 U.S.C. § 271(b) by inducing users and customers of LG televisions to use the Plug-and-Play and/or Smart TV functionality in an infringing manner.  For example, LG advertises and identifies to users the Plug-and-Play functionality and provides instructions on how to connect video sources to the television's VGA port, wherein the TV will then use the claimed technology.  By way of further example, LG provides instructional and tutorial materials for its Smart TV functionality instructing users on how to configure and connect the accused televisions to the internet and to on-line video providers in a manner that results in the use of the claimed inventions.  These materials include instructional videos posted on LG's web site.  In view of the foregoing, LG has possessed specific intent to encourage others, and has in fact encouraged others, to infringe one or more claims of the '970 patent.  The customers and end users have used and practiced the claimed inventions.

48.     On information and belief, LG has also indirectly infringed, either literally or under the doctrine of equivalents, one or more claims of the '970 patent under 35 U.S.C. § 271(b) by inducing third-parties to import, sell, or offer to sell LG televisions that possess Plug-and-Play and/or Smart TV functionality in the United States.  More particularly, LG has manufactured accused TV's overseas with full knowledge and intent that such TV's will be imported, sold, or offered for sale in the United States.  This intent is demonstrated at least by LG designing and manufacturing the TV's to be compliant with Federal Communication Commission (FCC) requirements, obtaining Underwriters Laboratories (UL) certification for the TV's, making the TV's compatible with ATSC broadcast standards used in the United States, providing written instructions and on-screen displays in English, maintaining a U.S. web site for marketing of the TV's, and by making the TV's compatible with U.S. power requirements.  LG

encourages third-parties to import and/or sell the accused TV's in the United States by entering into contractual relationships with them and assisting them with the movement of LG's TV's through distribution channels into and within the United States. Third-parties have, in fact, imported, sold, and/or offered to sell the accused LG TV's in the United States.  Such third parties include, by way of example Walmart and Best Buy.

49.     LG has also indirectly infringed, either literally or under the doctrine of equivalents, one or more claims of the '970 patent under 35 U.S.C. § 271(c) by importing, selling, and/or offering to sell in the United States televisions that possess Plug-and-Play and/or Smart TV functionality wherein there is no substantial non-infringing use for televisions with these features.  Further, televisions that include the foregoing functionalities are not staple items of commerce.  In addition, LG knew that the TV's with the foregoing functionalities were especially made and adapted to use the claimed inventions of the '970 patent. Customers and end users of the accused LG televisions have used and practiced the claimed inventions.

50.     LG's infringement has been willful.  LG has been aware of the '970 patent since no later than December 31, 2007, and LG has engaged in prior litigation with Mondis over this patent.  Furthermore, LG has previously taken a license to the '970 patent for computer monitors, wherein computer monitors employ substantially similar Plug-and-Play functionality.  Thus, LG's conduct has been objectively reckless, and LG has possessed subjective specific intent to infringe the patent.

51.     Mondis has been harmed by LG's infringement and is entitled to recover damages to compensate for the infringement.  Further, any damages award should be trebled in view of LG's willful infringement.

## COUNT III

### (LG's Infringement of the '342 Patent)

52.     Paragraphs 1 through 35 are incorporated by reference as if fully restated herein.

53.     LG has had knowledge of the '342 patent since no later than May 14, 2008.
Pursuant to 35 U.S.C. § 287(a), LG received actual notice of infringement no later than this date.

54.     LG has directly infringed, either literally or under the doctrine of equivalents, one
or more claims of the '342 patent under 35 U.S.C. § 271(a) by using, testing, operating and/or
demonstrating televisions possessing Plug-and-Play and/or Smart TV functionality at tradeshows
or during the execution of test and repair procedures at service facilities in the United States.

55.     LG has indirectly infringed, either literally or under the doctrine of equivalents,
one or more claims of the '342 patent under 35 U.S.C. § 271(b) by inducing users and customers
of LG televisions to use the Plug-and-Play and/or Smart TV functionality in an infringing
manner.  For example, LG advertises and identifies to users the Plug-and-Play functionality and
provides instructions on how to connect video sources to the television's VGA port, wherein the
TV will then use the claimed technology.  By way of further example, LG provides instructional
and tutorial materials for its Smart TV functionality instructing users on how to configure and
connect the accused televisions to the internet and to on-line video providers in a manner that
results in the use of the claimed inventions.  These materials include instructional videos posted
on LG's web site.  In view of the foregoing, LG has possessed specific intent to encourage
others, and has in fact encouraged others, to infringe one or more claims of the '342 patent.  The
customers and end users have used and practiced the claimed inventions.

56.     LG has also indirectly infringed, either literally or under the doctrine of
equivalents, one or more claims of the '342 patent under 35 U.S.C. § 271(c) by importing,

selling, and/or offering to sell in the United States televisions that possess Plug-and-Play and/or Smart TV functionality wherein there is no substantial non-infringing use for televisions with these features.  Further, televisions that include the foregoing functionalities are not staple items of commerce.  In addition, LG knew that the TV's with the foregoing functionalities were especially made and adapted to use the claimed inventions of the '342 patent. Customers and end users of the accused LG televisions have used and practiced the claimed inventions.

57.     LG's infringement has been willful.  LG has been aware of the '342 patent since no later than May 14, 2008, and LG has engaged in prior litigation with Mondis over this patent. Furthermore, LG has previously taken a license to the '342 patent for computer monitors, wherein computer monitors employ substantially similar Plug-and-Play functionality.  Thus, LG's conduct has been objectively reckless, and LG has possessed subjective specific intent to infringe the patent.

58.     Mondis has been harmed by LG's infringement and is entitled to recover damages to compensate for the infringement.  Further, any damages award should be trebled in view of LG's willful infringement.

## COUNT IV

### (LG's Infringement of the '180 Patent)

59.     Paragraphs 1 through 35 are incorporated by reference as if fully restated herein.

60.     LG has had knowledge of the '180 patent since no later than March 9, 2009. Pursuant to 35 U.S.C. § 287(a), LG received actual notice of infringement no later than this date.

61.     LG has directly infringed, either literally or under the doctrine of equivalents, one or more claims of the '180 patent under 35 U.S.C. § 271(a) by importing, selling, and/or offering to sell televisions that support Plug-and-Play functionality in the United States.  LG has also

directly infringed by using, testing, operating and/or demonstrating televisions possessing the Plug-and-Play functionality at tradeshows or during the execution of test and repair procedures at service facilities in the United States.

62.     LG has indirectly infringed, either literally or under the doctrine of equivalents, one or more claims of the '180 patent under 35 U.S.C. § 271(b) by inducing users and customers of LG televisions to use the Plug-and-Play functionality in an infringing manner.  For example, LG advertises and identifies to users the Plug-and-Play functionality and provides instructions on how to connect video sources to the television's VGA port, wherein the TV will then use the claimed technology.  In view of the foregoing, LG has possessed specific intent to encourage others, and has in fact encouraged others, to infringe one or more claims of the '180 patent.  The customers and end users have used and practiced the claimed inventions.

63.     On information and belief, LG has also indirectly infringed, either literally or under the doctrine of equivalents, one or more claims of the '180 patent under 35 U.S.C. § 271(b) by inducing third-parties to import, sell, or offer to sell LG televisions that possess Plug-and-Play functionality in the United States.  More particularly, LG has manufactured accused TV's overseas with full knowledge and intent that such TV's will be imported, sold, or offered for sale in the United States.  This intent is demonstrated at least by LG designing and manufacturing the TV's to be compliant with Federal Communication Commission (FCC) requirements, obtaining Underwriters Laboratories (UL) certification for the TV's, making the TV's compatible with ATSC broadcast standards used in the United States, providing written instructions and on-screen displays in English, maintaining a U.S. web site for marketing of the TV's, and by making the TV's compatible with U.S. power requirements.  LG encourages third-parties to import and/or sell the accused TV's in the United States by entering into contractual

relationships with them and assisting them with the movement of LG's TV's through distribution channels into and within the United States. Third-parties have, in fact, imported, sold, and/or offered to sell the accused LG TV's in the United States.  Such third parties include, by way of example Walmart and Best Buy.

64.     LG has also indirectly infringed, either literally or under the doctrine of equivalents, one or more claims of the '180 patent under 35 U.S.C. § 271(c) by importing, selling, and/or offering to sell in the United States televisions that possess Plug-and-Play wherein there is no substantial non-infringing use for televisions with this feature.  Further, televisions that include the Plug-and Play feature are not staple items of commerce.  In addition, LG knew that the TV's with Plug-and-Play were especially made and adapted to use the claimed inventions of the '180 patent. Customers and end users of the accused LG televisions have used and practiced the claimed inventions.

65.     LG's infringement has been willful.  LG has been aware of the '180 patent since no later than March 9, 2009, and LG has engaged in prior litigation with Mondis over this patent. Furthermore, LG has previously taken a license to the '180 patent for computer monitors, wherein computer monitors employ substantially similar Plug-and-Play functionality.  Thus, LG's conduct has been objectively reckless, and LG has possessed subjective specific intent to infringe the patent.

66.     Mondis has been harmed by LG's infringement and is entitled to recover damages to compensate for the infringement.  Further, any damages award should be trebled in view of LG's willful infringement.

## COUNT V

### (LG's Infringement of the '588 Patent)

67.     Paragraphs 1 through 35 are incorporated by reference as if fully restated herein.

68.     LG has had knowledge of the '588 patent since no later than December 31, 2007. Pursuant to 35 U.S.C. § 287(a), LG received actual notice of infringement no later than this date.

69.     LG has directly infringed, either literally or under the doctrine of equivalents, one or more claims of the '588 patent under 35 U.S.C. § 271(a) by importing, selling, and/or offering to sell televisions that support Plug-and-Play functionality in the United States.  LG has also directly infringed by using, testing, operating and/or demonstrating televisions possessing the Plug-and-Play functionality at tradeshows or during the execution of test and repair procedures at service facilities in the United States.

70.     LG has indirectly infringed, either literally or under the doctrine of equivalents, one or more claims of the '588 patent under 35 U.S.C. § 271(b) by inducing users and customers of LG televisions to use the Plug-and-Play functionality in an infringing manner.  For example, LG advertises and identifies to users the Plug-and-Play functionality and provides instructions on how to connect video sources to the television's VGA port, wherein the TV will then use the claimed technology.  In view of the foregoing, LG has possessed specific intent to encourage others, and has in fact encouraged others, to infringe one or more claims of the '588 patent.  The customers and end users have used and practiced the claimed inventions.

71.     On information and belief, LG has also indirectly infringed, either literally or under the doctrine of equivalents, one or more claims of the '588 patent under 35 U.S.C. § 271(b) by inducing third-parties to import, sell, or offer to sell LG televisions that possess Plug-and-Play functionality in the United States.  More particularly, LG has manufactured accused

TV's overseas with full knowledge and intent that such TV's will be imported, sold, or offered for sale, in the United States.  This intent is demonstrated at least by LG designing and manufacturing the TV's to be compliant with Federal Communication Commission (FCC) requirements, obtaining Underwriters Laboratories (UL) certification for the TV's, making the TV's compatible with ATSC broadcast standards used in the United States, providing written instructions and on-screen displays in English, maintaining a U.S. web site for marketing of the TV's, and by making the TV's compatible with U.S. power requirements.  LG encourages third-parties to import and/or sell the accused TV's in the United States by entering into contractual relationships with them and assisting them with the movement of LG's TV's through distribution channels into and within the United States. Third-parties have, in fact, imported, sold, and/or offered to sell the accused LG TV's in the United States.  Such third parties include, by way of example Walmart and Best Buy.

72.    LG has also indirectly infringed, either literally or under the doctrine of equivalents, one or more claims of the '588 patent under 35 U.S.C. § 271(c) by importing, selling, and/or offering to sell in the United States televisions that possess Plug-and-Play functionality wherein there is no substantial non-infringing use for televisions with this feature. Further, televisions that include the Plug-and Play feature are not staple items of commerce.  In addition, LG knew that the TV's with Plug-and-Play were especially made and adapted to use the claimed inventions of the '588 patent. Customers and end users of the accused LG televisions have used and practiced the claimed inventions.

73.    LG's infringement has been willful.  LG has been aware of the '588 patent since no later than December 31, 2007, and LG has engaged in prior litigation with Mondis over this patent.  Furthermore, LG has previously taken a license to the '588 patent for computer monitors,

wherein computer monitors employ substantially similar Plug-and-Play functionality.  Thus, LG's conduct has been objectively reckless and LG has possessed subjective specific intent to infringe the patent.

74.     Mondis has been harmed by LG's infringement and is entitled to recover damages to compensate for the infringement.  Further, any damages award should be trebled in view of LG's willful infringement.

**DEMAND FOR JURY TRIAL**

75.     Mondis hereby demands a trial by jury on all claims and issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Mondis Technology Ltd. respectfully requests judgment for itself and against Defendants as follows:

a)      That this Court issue a judgment that each of U.S. Patent Nos. 6,513,088; 6,549,970; 7,089,342; 7,475,180; and 6,639,588 are valid and enforceable

b)      That this Court adjudge that Defendants have infringed each of U.S. Patent Nos. 6,513,088; 6,549,970; 7,089,342; 7,475,180; and 6,639,588.

c)      That this Court ascertain and award Mondis all appropriate damages under 35 U.S.C. § 284 sufficient to compensate Mondis for the Defendants' past infringement, including interest, costs, and disbursements.

d)      That this Court adjudge Defendants' infringement of one or more of the patents-in-suit to have been willful and to award treble damages pursuant to 35 U.S.C. § 284.

e)      That this Court finds this case to be exceptional within the meaning of 35 U.S.C. § 285 and awards Mondis its reasonable attorneys' fees, costs, and expenses that Mondis incurs in prosecuting this action; and

f)      That this Court awards Mondis any further relief at law or in equity as the Court

deems just and proper.

DATED:   June 21, 2014                    Respectfully submitted,


                                          By: /s/Jeffrey B. Plies

                                          Jeffrey B. Plies
                                          Texas Bar No. 24027621
                                          jeff.plies@dechert.com
                                          DECHERT LLP
                                          300 W. 6th Street, Suite 1850
                                          Austin, TX 78701
                                          Telephone: (512) 394-3000

                                          Otis W. Carroll
                                          Texas Bar No. 03895700
                                          nancy@icklaw.com
                                          Patrick Kelley
                                          Texas Bar No. 11202500
                                          patkelley@icklaw.com
                                          IRELAND, CARROLL & KELLEY, P.C.
                                          6101 S. Broadway, Suite 500
                                          Tyler, Texas 75703
                                          Tel: (903) 561-1600
                                          Fax: (903) 581-1071

                                          *Attorneys for Plaintiff Mondis Technology Ltd.*